LESTER GILDRIE AND JOHN KENNIE, ALIAS JOHN KENNEY, *Plaintiffs in Error*, v. STATE OF FLORIDA, *Defendant in Error*.

En Banc.

Opinion Filed July 9, 1927.

*Bassett & Hunter,* for Plaintiffs in Error;

*J. B. Johnson,* Attorney General, and *Roy Campbell,* Assistant, for Defendant in Error.

BUFORD, J.—The record in this case shows that the plaintiffs in error, together with one Albert House and one Teresa House, were informed against in the Criminal Court of Record of Hillsborough County for breaking and entering a store building in Tampa, Florida, the property of Knight & Wall Company, a corporation, with intent to commit a felony and also for the offense of receiving and concealing stolen goods, knowing the same to have been stolen; that Albert House pleaded guilty; that the plaintiffs in error pleaded not guilty, were convicted and sentenced to serve a period of twenty years in the State Prison. The evidence shows that the store of Knight & Wall Company had been broken in and certain articles stolen therefrom. A number of these articles were identi-

fied at the trial and were shown to have been found in a dwelling house which was occupied at the time of the search by the persons named in the information, including the plaintiffs in error. The record shows that the search was made under the pretended authority of a search warrant, which search warrant is shown to have been based on affidavit made by a deputy sheriff in the following language, to-wit:

"IN THE COUNTY JUDGE'S COURT

STATE OF FLORIDA,
COUNTY OF HILLSBOROUGH

Before, me, Julian L. Hazard, County Judge of said County, personally came Haston Taylor, who being duly sworn, says that on the 17th day of March, A. D. 1925, in the County aforesaid, one ———— this affiant has reason to believe and does believe that there is now within that certain building situated on Central Avenue, and being 5110, in the City of Tampa, Hillsborough County, Florida, various and sundry stolen goods, a further description thereof being to affiant unknown; that the owner of said building is unknown to affiant; that affiant is informed and believes that the name of the person living in or in charge of said building, is GEORGE ROSS; that said stolen goods are being stored, held and possessed in said building contrary to law; that the facts tending to establish probable cause for this affiant believing the stolen goods are being stored, secreted, held and possessed in said building in violation of law, are the reports of reliable citizens handed to affiant. Wherefore, this affiant who is an officer of Hillsborough County, Florida, to-wit: a Deputy Sheriff, prays a warrant to enter said building and the premises upon which the same is situate, and there to search for said stolen goods, pursuant to statute in such case made and provided,

and to arrest the said GEORGE ROSS and any other occupants of said building.

Haston Taylor.''

The warrant issued thereon was in the following language, to-wit:

"IN THE COUNTY JUDGE'S COURT.

STATE OF FLORIDA,
COUNTY OF HILLSBOROUGH.
TO ALL AND SINGULAR THE SHERIFFS OF THE STATE OF FLORIDA:

WHEREAS, Haston Taylor has this day made oath before me that on the 17th day of March, A. D. 1925, in the County aforesaid, one, This affiant has reason to believe and does believe that there is now within that certain building situated on Central Avenue, and being numbered 5110, in the City of Tampa, Hillsborough County, Florida, various and sundry stolen goods, a further description thereof being to the affiant unknown; that the owner of said building is unknown to affiant; that affiant is informed and believes that the name of the person living in or in charge of said building is George Ross; that said stolen goods are being stored, held and possessed in said building contrary to law; that the facts tending to establish probably cause for this affiant believing the stolen goods are being stored, secreted, held and possessed in said building in violation of law are the reports of reliable citizens handed to affiant. Wherefore this affiant who is an officer of Hillsborough County, Florida, to-wit: A Deputy Sheriff, prays a warrant to enter said building and premises upon which the same is situated, and there to search for said stolen goods, pursuant to statute in such case made and provided, and to arrest the said GEORGE ROSS and any other occupants of said building.

THESE ARE THEREFORE TO COMMAND YOU then and there to diligently search the above described premises, with proper and necessary assistant in the daytime and if the aforesaid goods and property or any part thereof are found, to seize the same, arrest the body of the said GEORGE ROSS and any other occupants of the said building, and bring him or them before me to be disposed of and dealt with according to law.

Given under my hand and official seal this 17th day of March, A. D. 1925.

(Signed) Julian L. Hazard (Seal)
County Judge.

The only question of any importance presented in this case is whether or not evidence, obtained by the searching of a dwelling house, which search is made without the consent of the occupant of the dwelling house and without a valid search warrant authorizing the search of such dwelling house, and the seizure of the goods or other things constituting such evidence, is admissible to prove the commission of the criminal act.

The courts of the country are not in harmony upon the question of the admissibility of such testimony. In this case neither the affidavit nor the search warrant sufficiently complies with the provisions of Section 22 of the Bill of Rights of the State of Florida, nor the statutes in such cases provided, in that no description of the things to be seized is found either in the affidavit or in the warrant. 24 R. C. L. 714. The warrant, therefore, was not authority of law for searching the place described therein and was not authority of law for the seizure of any articles found in that dwelling house.

In the case of Jackson v. The State, 87 Fla. 262; 99 Sou. 548, Mr. Justice TERRELL, speaking for the Court, said:

"When searches and seizures are made pursuant to the command of a search warrant both the search warrant and

the prerequisite oath or affirmation required for it must conform strictly to the constitutional and statutory provisions authorizing their issue. This is true because there is no process known to the law the execution of which is more distressing to the citizen or that actuates such intense feeling of resentment on account of its humiliating and degrading consequences. As thus enunciated the law is in line with and is no doubt the child of our Anglo-Saxon spirit of liberty which holds every man's house or dwelling as his castle, and which declares that it must not be invaded or subjected to an uninvited search except by a duly qualified officer, and then only in pursuance of a valid writ commanding it. White v. Wagar, 185 Ill. 195, 57 N. E. Rep. 26, 50 L. R. A. 60.

As was said in Smith v. McDuffee, 72 Ore. 276, text 284, 142 Pac. Rep. 558, 143 Pac. Rep. 929, such searches are usually made without the consent of the occupant of a domicile and the investigation being a proceeding *in invitum,* the statute authorizing it is to be strictly construed and no presumptions of regularity are to be invoked in aid of the process under which a proper officer obeying its commands undertakes to justify.

Section 22, Bill of Rights, Constitution of Florida, is as follows: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches, shall not be violated, and no warrants issued but upon probable cause, supported by oath or affirmation, particularly describing the place or places to be searched, and the person or persons, and thing or things to be seized."

The Fourth Amendment to the Federal Constitution is almost identical in statement to Section 22, Bill of Rights of our Constitution."

In the case of Angello et al. v. United States, 70 Law Ed.

145, the Supreme Court of the United States, speaking through Mr. Justice Butler, say:

"While the question has never been directly decided by this Court, it has always assumed that one's house cannot lawfully be searched without a search warrant, except as an incident to a lawful arrest therein. Boyd v. United States, 116 U. S. 616, 624, *et seq.,* 630, 29 L. Ed. 746, 748, 751, 6 Sup. Ct. Rep. 524; Weeks v. United State, *supra,* 393, (58 L. Ed. 655, L. R. A. 1915B, 834, 34 Sup. Ct. Rep. 341, Ann. Cas. 1915C, 1177) ; Silverthorne Lumber Co. v. United States, *supra,* 391 (64 L. Ed. 321, 24 A. L. R. 1426, 40 Sup. Ct. Rep. 182) ; Gouled v. United States, 255 U. S. 298, 308, 65 L. Ed. 647, 652, 41 Sup. Ct. Rep. 261. The protection of the 4th Amendment extends to all equally—to those justly suspected or accused, as well as to the innocent. The search of a private dwelling without a warrant is, in itself, unreasonable and abhorrent to our laws. Congress has never passed an act purporting to authorize the search of a house without a warrant. On the other hand, special limitations have been set about the obtaining of search warrants for that purpose. Thus, the National Prohibition Act, approved October 28, 1919, Chap. 85, Title II. 25, 41 Stat. at L. 305, 315 Comp. Stat. 10,138½m, Fed. Stat. Anno. Sup. 1919, p. 213, provides that no search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicationg liquor, or is in part used for business purposes, such as store, shop, saloon, restaurant, hotel or boarding house. And later, to the end that Government employees without a warrant shall not invade the homes of the people and violate the privacies of life, Congress made it a criminal offense, punishable by heavy penalties, for any officer, agent or employee of the United States, engaged in the enforcement of any law, to search

a private dwelling house without a warrant directing such search. Act of Nevember 23, 1921, Chap. 134, 6, 42 Stat. at L. 222, 223, Comp. Stat. 10,184a, Fed. Stat. Anno. Supp. 1921, p. 230. Safeguards similar to the 4th Amendment are deemed necessary and have been provided in the Constitution and laws of every state of the Union. We think there is no state statute authorizing the search of a house without a warrant; and, in a number of states laws recently enacted for the enforcement of prohibition in respect of intoxicating liquors, there are provisions similar to those in 25, of the National Prohibition Act. Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, Federal or State, for the search of a private dwelling house without a warrant. Absence of any judicial approval is persuasive authority that it is unlawful. See Entick v. Carrington, 19 How. St. Tr. 1030, 1066. Belief, however well founded, that an article sought is concealed in a dwelling house, furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause. See Temperani v. United States (C. C. A. 9th) 299 Fed. 365; United States v. Rembert (D. C.) 284 Fed. 996, 1000; Connelly v. United States (D. C.) 275 Fed. 509; McClurg v. Brenton, 123 Iowa, 368, 372, 65 L. R. A. 519, 101 Am. St. Rep. 323, 98 N. W. 881; People v. Margolis, 220 Mich. 431, 190 N. W. 306; Childers v. Com. 198 Ky. 848, 250 S. W. 106; State v. Warfield, 184 Wis. 56, 198 N. W. 854.''

And further, in the same opinion, the court say:

''It is well settled that, when properly invoked, the 5th Amendment protects every person from incrimination by the use of evidence obtained through search or seizure made in violation of his rights under the 4th Amendment. Boyd v. United States, *supra*, 630, et seq. (29 L. Ed. 751,

6 Sup. Ct. Rep. 524); Weeks v. United State, *supra,* 398, (58 L. Ed. 657, L. R. A. 1915B, 834, 34 Sup. Ct. Rep. 341, Ann. Cas. 1915C, 1177); Silverthorne Lumber Co. v. United States, *supra,* 391, 392 (64 L. Ed. 321, 322, 24 A. L. R. 1426, 40 Sup. Ct. Rep. 182); Gouled v. United States, *supra,* 306 (65 L. Ed. 651, 41 Sup. Ct. Rep. 261); Amos v. United States, 255 U. S. 313, 316, 65 L. Ed. 654, 656, 41 Sup. Ct. Rep. 266.''

Section 12 of the Bill of Rights of the Constitution of the State of Florida is as follows:

''No person shall be subject to be twice put in jeopardy for the same offense, nor compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law; nor shall private property be taken without just compensation.''

There is little difference between the wording of this provision of our State Constitution and the 5th Amendment to the Constitution of the United States, and, as will be seen by referring to the case of Angello v. United States, *supra,* and numerous cases there cited, the highest judicial authority holds that evidence obtained by the unlawful search of a dwelling house is not admissible to prove the occupant of such dwelling house guilty of a criminal offense upon the ground that the obtaining of such evidence is in conflict with the 5th Amendment to the Constitution of the United States. It therefore follows that evidence so obtained in this State be excluded on proper objection being made because to admit it is not only to violate the 5th Amendment of the Federal Constitution but also violates Section 12 of the Bill of Rights of the Constitution of Florida. See also Hart v. State, 89 Fla. 202; 103 Sou. Rep. 633.

It may be that when the judgment in this case is reversed two men who have participated in a gross violation of a

criminal law of this State will probably go free of further punishment, but this result should not deter this Court from enforcing the provisions of the Constitution of the State of Florida and the provisions of the statute of this State which were made and have stood through the ages as a protection against the invasion of the dwelling house of every man.

It is clear that except for the evidence obtained under the pretended authority of the invalid search warrant issued upon an insufficient affidavit there could have been no conviction of the plaintiffs in error and we are forced to the conclusion that that evidence so obtained was erroneously admitted and that therefore the judgment of conviction should be reversed and it is so ordered.

Reversed.

ELLIS, C. J., AND STRUM AND BROWN, J. J., concur.

WHITFIELD AND TERRELL, J. J., dissent.